OPINION
GARY P. SULLIVAN, Chief Justice.
FACTUAL BACKGROUND AND PROCEDURAL OVERVIEW
Harry Richter (Dr. Richter) is a licensed physician who specializes in ear, nose and throat disorders. He is admitted to practice in the Community Memorial Hospital in Sidney, MT., and, pursuant to an agreement which benefits the members of the Fort Peck Tribes [1], he is admitted to practice in the Poplar Community Hospital, Poplar, MT.
On February 9, 1994, the plaintiff, Rhonda Clark, (Rhonda) who was a minor at that time, underwent surgery for the removal of her tonsils and adenoids. The surgery was performed in the Poplar Community Hospital by Dr. Richter.
Subsequently, Rhonda experienced post-operative difficulties resulting in profuse bleeding from her mouth. Her mother rushed her to the Emergency Room at the Poplar Community Hospital where she was told that such bleeding was “normal” and that she should return home and gargle with water and peroxide. Rhonda had a follow up visit at the Riverside Clinic in Poplar, MT. Her condition did not improve and eventually culminated in her being rushed by ambulance to the Community Memorial Hospital in Sidney, where Dr. Richter, performed a second surgery. Following this surgery, Rhonda continued to experience complications and allegedly suffered permanent injury to her light recurrent laryngeal nerve. The nerve damage allegedly has resulted in speech *182 impairments and episodes of choking when swallowing food.
Debra Clark, Rhonda’s mother, filed a complaint on Rhonda’s behalf, however, our record does not show the date the complaint was filed. Apparently that complaint was dismissed and again, our record is silent as to procedural details and reason(s) for the disposition. On December 10, 1997, Rhonda, who reached the age of majority on May 29, 1997, filed a complaint in Tribal Court alleging medical malpractice. That complaint was dismissed by the Tribal Court on February 25, 1998, without prejudice, due to the fact that it was not verified, as required by Title IV, § 101. Rhonda filed the amended complaint herein on February 13, 1998[2].
Dr. Richter filed a Motion to Dismiss on March 11, 1998, citing the Tribal Court’s lack of subject matter jurisdiction, insufficiency of process, and a denial of his due process and equal protection rights due to an alleged systematic exclusion of non-Tribal members in the jury pool.
On April 3, 1998, the Tribal Court denied Dr. Richter’s Motion to dismiss the amended complaint. This denial was memorialized in the form of a written order by the Honorable Georgia Dupuis, on May 11, 1998, without comment. It is from this order that defendant takes exception and requests our review.

ISSUES PRESENTED

Defendant requests our review, citing the following issues:
1. Whether the Tribal Court lacked subject matter jurisdiction due to the condition of the verification as it exists on the amended complaint?
2. Whether the Tribal Court lacked subject matter and/or in per-sonam jurisdiction:
A. due to the plaintiffs failure to comply with the Montana Medical Legal Panel Act (M.C.A. § 27-6-101 et seq.)?
B. due to the complaint being barred by the applicable statute of limitations (Title IV CCOJ, § 601)?
C. due to the Strate doctrine?
D. due to alleged malpractice which took place off the reservation, as reflected in paragraphs X through XVI of plaintiffs amended complaint?
3. Whether defendant’s due process rights were violated for failure of the Court to notify defendant of a hearing pursuant to Title IV § 103?
4. Whether the defendant’s due process and equal protection rights have been violated by the systematic exclusion of non-Tribal members from the jury pool? (See Title II CCOJ § 507(b)[3])

STANDARD OF REVIEW

“The jurisdiction of the Court of Appeals shall extend to all appeals from final orders and judgments of the Tribal Court. The Court of Appeals shall review de novo all determinations of the Tribal Court on matters of law, but shall not set aside any *183 factual determinations of the Tribal Court if such determinations are supported by substantial evidence.” Title I, CCOJ § 201.
Whether our Tribal Court has subject matter jurisdiction, in personam jurisdiction, or whether our Tribal Court has violated a person’s due process or equal protection rights are all questions of law, thus we review these matters de novo.

DISCUSSION

The verification question. Defendant first contends that plaintiffs amended complaint is not properly verified as required by Title IV, § 101 of the CCOJ., which reads:
“Sec. 101. Complaint.
A complaint is a concise written statement of the essential facts constituting the claim. All civil proceedings shall be commenced by filing a complaint with the clerk, accompanied by a filing fee of ten dollars ($10.00) and the costs of service. Tribal Civil Form No. 1, or its equivalent may be used. The complaint shall be verified before a judge, clerk or assistant clerk, or any notary public”
Defendant states that “verification is the confirmation of correctness, truth, or authenticity, by affidavit, oath, or deposition.” We readily agree.
At the bottom of Plaintiffs amended complaint, after setting forth the various allegations and prayer, the “verification”, such as it is, appears:
“The above Complaint and Demand for Jury Trial are hereby verified. Dated: 2-13-98
s/Janice Garfield
Clerk of Tribal Court”
Defendant asserts that “(p)laintiff has not verified under oath the correctness and/or truth of the allegations made against defendant Richter contained in her Amended Complaint.” Again, we readily agree. There is little question that the verification, as it appears on plaintiffs complaint, is defective.
However, even though we readily agree with defendant’s contentions regarding the defect in verification, we do not agree that such a defective verification ousts jurisdiction from the Tribal Court, nor can we agree that the defendant has shown any prejudice resulting therefrom.
Two important factors weigh in on our thinking: First, we take judicial notice of the fact that “Janice Garfield” is a Clerk of the Tribal Court and that any defect in the verification process is occasioned by the Tribal Court and not the litigants. Secondly, we also note that the practice of verifying complaints is not exclusively for the purpose of “... confirmation of correctness, truth, or authenticity, by affidavit, oath, or deposition.” As early as 1856 [4] the practice of verifying a complaint was more of a tactical decision by the plaintiffs attorney. When plaintiffs verified their complaints they could require a sworn denial, and thus prevent their defendants from interposing a general denial in suits on promissory notes or bills of exchange. (See Brooks v. Chilton, 6 Cal. 640, 1856 Cal. LEXIS 222 (1856)). Even so, when there was an objection to the lack of verification of a complaint that was required by the code, the objection must have been taken either before answer or with answer. The filing of an answer was a waiver of the objection. (See Greenfield v. Steamer Gunnell, 6 Cal 67, 69, 1856 Cal. LEXIS 27 (1856).)
*184 As we have noted, the defect in the verification was occasioned by the Tribal Court Clerk, not the plaintiff. In applying any kind of “fairness doctrine” it is extremely difficult for us to visit the penalty for this failure upon the plaintiff. Fortunately, we do not need to grapple with that issue. We believe the California Courts have it right when they hold that any objection to a code required verification must be made before or concurrent with the filing of the answer. Thus, today we hold that, if there is any defect in the verification of a complaint, the defendant must make the objection before or concurrent with the filing of the answer or other “first paper[5]”. We further hold that in the absence of a timely objection, the defect is waived.
In reaching this holding, yet another factor weighed in heavily and that is the fact that defendant did not show any prejudice that was occasioned by this defect. Whether some showing of prejudice would have changed our holding is not something we need decide here. However, in applying fairness, we must always consider all of the parties, and in so doing, we leave the door open for exceptions to this rule when the defendant can show prejudice flowing directly from the defective verification.
The Medical Legal Panel Act question. Defendant next cites plaintiffs failure to comply with the Montana Medical Legal Panel Act, Section 27-6-101, et seq., Montana Code Annotated. In support of this proposition, defendant points out that our Tribal Court, in Ferguson v. Poplar Hosp. Assoc., Cause No. CVP 0911 (1992), stated:
“The Comprehensive Code of Justice (CCOJ) of the Assiniboine and Sioux Tribes, specifically grants this Court discretion in adopting and utilizing laws of this State, IV CCOJ, 501(d). Therefore this Court will adopt and be guided by MCA 27-6-101, entitled ‘Montana Medical Malpractice Act’ in this action.” (quoted from p. 5 Defendant’s brief)
Defendant further points out that this Court, affirmed that holding in Ferguson v. Poplar Hospital, FPCOA # 200. We agree that defendant correctly sets forth the holdings in Ferguson. The problem with defendant’s analysis, is that he extends the Ferguson holding, wherein our Tribal Court “adopted” MCA 27-6-101, to each awl every medical malpractice lawsuit filed in our Tribal Court. To that extent, we unwilling to travel.
MCA 27-6-101 states:
“No malpractice claim may be filed in any court against a health care provider before an application is made to the Panel and its decision is rendered.”
A closer and careful reading of Chief Judge Stafne’s order in Ferguson, reveals:
“Therefore this Court will adopt and be guided by MCA 27-6-101, entitled ‘Montana Medical Malpractice Act ’ in this action ”. (our emphasis)
We cannot, in good conscience, expand Chief Judge Stafne’s order. He stated that he was adopting 27-6-101 in the particular action before him. He did not, in any way, imply that his order would go out into the land as an edict for all others who would come before the Tribal Court alleging medical malpractice. However, we can certainly understand defendant’s implied *185 argument that, “if it’s good in one case it should prove good in all others”. We can also understand how defendant could fortify this implied argument with the favorable language that this Court used regarding 27-6-101 in FPCOA # 200.
When our Court affirmed Ferguson, the primary issue was our interpretation of our CCOJ, Title IV § 501(d)[6]. Specifically, the appellant in Ferguson challenged the Tribal Court’s authority to adopt Montana law, suggesting that to do so, would be a usurpation of power vested only in the Tribal Executive Board. At no time in our opinion in Ferguson did we endorse the notion that 27-6-101 be applied to all incoming medical malpractice cases. Nor do we do so now. Rather, we held in Ferguson, and we re-affirm now, that the Tribal Court has discretion to adopt 27-6-101 on a case by case basis. If defendant feels that the interests of justice would be better served by applying 27-6-101 to the case before us, the proper procedure would be to motion the Tribal Court for that purpose.
The Statute of Limitations question. Defendant argues that plaintiffs complaint is barred by CCOJ, Title IV § 601, which states:
“ Sec. 601. Limitation of actions.
The Court shall have no jurisdiction over any action brought more than three (3) years after the cause of action arose, except that no statute of limitation shall bar an action commenced by the Tribes.”
We visited the general issue of the statute of limitations and the interpretation of § 601 in Todd v. General Motors, FPCOA
# 215. However, the facts in this case present a variation on the general theme. Stated simply, does minority toll the statute of limitations? As scores of jurisdictions before us have done, we answer this question affirmatively.
As we stated in Todd, when interpreting our statute of limitations “. .. the Tribal Council’s intent and policy in prescribing a period of limitation for the commencement of actions, must be borne in mind ...” Although the plain words of the statute do not appear to allow for exceptions, we find guidance in one of our Criminal Statutes:
“Sec. 102. Time limit for commencing criminal prosecution.
With the exception stated below, no prosecution for an offense under this Code shall be maintained unless the complaint is filed within one (1) year after the commission of the offense. Where the complaint alleges violation of Section 208 or 214a of Title III, and the alleged victim is eighteen (IS) gears of age or less, there is no time limit for filing the complaint. Where the complaint alleges violation of Section 209, 210, 214, or 214b of Title III, and the victim is eighteen (18) gears of age or less, the complaint must be filed within five (5) gears of commission of the offense. Time during which the accused is outside the jurisdiction of the Court, for whatever reason, shall not be included in this one (1) year time limit.”
It is clear from the statute of limitation on criminal prosecution, that when two of the crimes ( § 208 {Rape} & § 214 {Sexual Assault}) involve minors, our Tribal Executive Board extended the period of *186 commencement for criminal prosecution from one (1) year to “no time limit” for one crime against a child (Rape) and from one (1) year to five (5) years for another (Sexual Assault). We also take judicial notice of the fact that our Tribal Council expends ten of thousands of dollars each year commissioning our tribal attorney to appear in various state jurisdictions under the auspices of The Indian Child Welfare Act (25 USC 1911). The sole purpose of these expenditures is to protect our children.
It is virtually inconceivable to us that, based upon the statute cited above, and the commitment of our Tribal Council in l.W.C.A. matters, that our Tribal Council would not protect its children, against whom tortious action had been visited.
Accordingly, we hold that the three year statute of limitations in § 601 is tolled during minority and therefor does not commence running until the age of majority is attained.
The “Strate doctrine” question. Defendant also argues that the Tribal Court lacks subject matter jurisdiction and in personam jurisdiction based upon the U.S. Supreme Court holding in Strate v. A-1 Contractors (1997) 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661. In Strate, a non-Indian widow, residing[7] on the Fort Berthold Reservation, was seriously injured in a vehicular accident on a North Dakota highway which runs for 6.59 miles through the Three Affiliated Tribes’ Reservation. North Dakota maintained the highway pursuant to a federal grant for that purpose. The other vehicle was owned by A-l Contractors, which was based off the Reservation and which had contracted with a wholly owned subsidiary of the Three Affiliated Tribes for landscaping work on the Reservation. The A-l vehicle was driven by Stockert, an A-l employee, who lived off the Reservation. The Strate court held that Montana v. United States (1981) 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 provided the general rule. Montana held that Tribal governments lacked jurisdiction to regulate hunting and fishing of non-members when that activity takes place on non-Indian, alienated land, subject to only two exceptions. In accord with the general rule set forth in Montana, the Strate court held that when a non-Indian sues a non-Indian for damages arising from an injury suffered on non-Indian alienated territory, the Tribal Court lacked jurisdiction. The two exceptions articulated in Montana were restated by the Strate court:
“Montana thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe’s political integrity, economic security, health, or welfare. The Montana Court recognized that the Crow Tribe retained power to limit or forbid hunting or fishing by nonmembers on land still owned by or held in trust for the Tribe. Id., at 557, 101 S.Ct. 1245. The Court held, however, that the Tribe lacked authority to regulate hunting and fishing by non-Indians on land within the Tribe’s reservation owned in fee simple by non-Indians. Id., at 564-567, 101 S.Ct. 1245.” Id. at pp. 446-447
*187 Our recor’d reflects that we have a plaintiff who is a member of the Fort Peck Tribes, suing a non-Indian doctor, for damages resulting from an alleged injury which took place on the grounds of the Poplar Community Hospital, Poplar, MT., and continued at another medical facility off the reservation. It is alleged by the defendant that the Poplar Community Hospital is on alienated, non-Indian property. There is conflicting evidence as to where the alleged malpractice took place. For the purposes of this review, we take the unusual step of assuming facts that are most advantageous to defendant, that is, our analysis of the Strate doctrine assumes that Dr. Richter’s negligence, if any there be, took place on alienated, non-Indian land.
In a case that has been under review by this Court concurrent with the case herein, we stated:
“Thus, in applying Montana’s first exception to the facts in our case, it is clear that the dispute involves an Indian plaintiff, who is not a party to the agreement, but by his very appearance on the Fort Peck Reservation, is a subject to be either protected or pursued by the parties to the agreement (n5). The defendants in this dispute are at the very least, authorized agents of both of the principals to the agreement. Finally, the Fort Peck Tribes are certainly no stranger to the incident herein, which could, inter alia, ultimately require their appearance in a Court of Law under the doctrine of respondent superior. (n5 In the nature of a third party beneficiary)” (Lilley v. Davis, FPCOA # 293 at p. 5, 2000 WL 35716349, 2 Am. Tribal Law 173, 176)
In Lilley, a young Indian boy was allegedly searched inappropriately by a female Roosevelt County Sheriff’s deputy. A codified provision in the Fort Peck CCOJ provided for “cross-deputization” of certain Montana law enforcement officers and the accused female deputy was operating under the “cross-deputization” agreement with the Fort Peck Tribes. The alleged incident took place on alienated, non-Indian land. We held that the first exception in Montana was met and accordingly, the Tribal Court was vested with jurisdiction.
The facts herein, while distinguishable, are somewhat similar to those in Lilley. First, Rhonda is a member of the Fort Peck Tribes and she entered into an agreement directly with Dr. Richter, a non Indian, whose office is based off the reservation. Here, the defendant voluntarily entered into the relationship with Iihonda. It could also be said that Rhonda, as well as the Ti'ibes, is a third-party beneficiary to the chain of agreements between Dr. Richter, the Poplar Community Hospital, and the Indian Health Services. In Lilley, we likened the young Indian boy’s status to that of a “third party beneficiary” of the agreement. Here, Rhonda could also be likened to a “third party beneficiary”, having received medical services which were arranged for the benefit of members of the Tribes, as well as other Indians who qualify. Finally, the Tribes are certainly not strangers to the incident inasmuch as it was the very agreement benefiting the Tribes, and it’s members, that brought Rhonda and Dr. Richter together in the first instance.
While we also believe the second exception in Montana may be applicable, we do not need to go further in holding that Strate does not oust jurisdiction of this matter from our Tribal Court.
Malpractice “off the reservation” question. Defendant asserts that the Tribal Court lacks subject matter and in personam jurisdiction due to the fact that the alleged malpractice took place off the reservation, as reflected in paragraphs *188 X through XVI of plaintiffs amended complaint. In that portion of the complaint, plaintiff alleges that a second operation was performed at the Community Memorial Hospital in Sidney, MT., which is not within the exterior boundaries of the Fort Peck Reservation.
First, we note that defendant offers no legal authority for this proposition. If the operation at Sidney was a singular event, all could agree that the Fort Peck Tribal Court’s jurisdiction could be seriously questioned. However, the second operation in Sidney was not a singular, stand alone, event. First, there was an apparent desire by Dr. Richter to offer his professional services to those residing on the reservation. Then there was an agreement entered into by Dr. Richter to treat members of the Fort Peck Tribes and their families within the exterior boundaries of the Fort Peck Tribes. Additionally, there must have been an office visit, referral or some patient/physician contact on the Fort Peck Reservation between Rhonda and Dr. Richter. Subsequently there was a consent given, ostensibly on the Fort Peck Reservation, by either Rhonda or her parents allowing Dr. Richter to perform an operation on Rhonda at the Poplar Community Hospital, which is located within the exterior boundaries of the Fort Peck Reservation. Then there were follow up visits within the exterior boundaries of the Fort Peck Reservation. The only contact with Sidney, MT., was when Rhonda was rushed there by ambulance from the Fort Peck Reservation.
There is nothing clear cut in our record which pin points the exact time and location of the alleged malpractice. Indeed, our record shows great conflict regarding when and where the alleged malpractice took place, if at all. What we do know however, is that Dr. Richter voluntarily came to Fort Peck to offer his services. Rhonda accepted that offer on the Fort Peck Reservation. Those services were performed on the Fort Peck Reservation. There are manifold contacts with all of the parties on the Fort Peck Reservation. These contacts are clearly sufficient to repose original jurisdiction in the Tribal Court. Given the original jurisdiction of the Tribal Court, it would appear to us that fundamental fairness would dictate that all matters ancillary to the original jurisdiction of that court, should be left to it. Nonetheless, if defendant can show us any legal authority suggesting that under the foregoing cited facts, that the Tribal Court ought not have jurisdiction, our minds and hearts will be open to listen.
The “insufficiency of process” question and the “systematic exclusion of non-Tribal members from the jury pool question”. Defendant complains that his due process rights were violated due to the Tribal Court’s failure to notify defendant of a hearing pursuant to CCOJ, Title IV § 103[8]. Defendant also complains that *189 his due process and equal protection rights have been denied due to the “systematic exclusion of non-Tribal members from the jury pool” pursuant to CCOJ, Title II, § 507(b). These issues are not ripe for review in that there has been no final order of the Tribal Court depriving defendant of the § 103 hearing, nor has there been a trial wherein a jury was impaneled “systematically excluding non-Tribal members”. While we agree that these are very important issues, they are brought to this Court at an inappropriate time. In In re: Mariah Watchman, FPCOA # 242 we clarified when an order is ripe for review and stated the general rule:
“We note that this Court has not adopted a general rule applicable in determining whether an order or judgment is final or merely interlocutory. Accordingly, we hold that as a general test, that when an order or judgment leaves no issue for future consideration except the fact of compliance or noncompliance with its’ terms, then that order or judgment is final for the purposes of appeal. On the other hand, if the order or judgment leaves anything further in the nature of judicial action on the part of the Court, which action is essential to the determination of the rights of the parties, then that order or judgment is interlocutory.” (Id. at p. 5)
Our present declination to hear defendant on these issues is procedural in nature only and does not preclude defendant from raising them again at the appropriate time.
The Order of the Tribal Court denying defendant’s Motion to Dismiss is affirmed.
CONCUR GERARD M. SCHUSTER Associate Justice, CARROLL J. DeCOTEAU, Associate Justice.

. We take judicial notice of the fact that Poplar Community Hospital extends surgical and medical practice privileges to doctors pursuant to an agreement. Additionally, we take judicial notice that Indian Health Services contracts with Poplar Community Hospital for the payment of medical services rendered to members of the Fort Peck Tribes, as well as other qualified Indians. The Fort Peck Tribes and it's members are third party beneficiaries to both of these agreements.

. Apparently the amended complaint was filed in anticipation of the dismissal.

. Section 507 Right to Jury Trial
(b) An eligible juror is a tribal member who has reached the age of eighteen (18) years, but is less than seventy (70) years of age, is of sound mind and discretion, has never been convicted of a felony, is not a member of the Tribal Council, or a judge, officer or employee of the Court or an employee of the Reservation police force or Reservation jail, and is not otherwise disqualified according to standards established by the Court.

. It should be noted this practice is still alive and well in California today.

. Our record does not indicate when, or if, the defendant's answer was filed. We assume that if the matter had been set for trial, there must have been an answer on file. Our holding would not change however, even if defendant had not filed his answer due to the fact that defendant filed his Motion to Dismiss (first paper) without citing this defect.

. Sec. 501. Applicable laws.
In determining any case over which it has jurisdiction, the Court shall give binding effect to:
... (d) where appropriate, the Court may in its discretion be guided by statutes, common law or rules of decision of the State in which the transaction or occurrence giving rise to the cause of action took place.

. There was apparently a factual dispute as to whether Gisela Fredericks, the plaintiff in Slnue, was actually residing on the Fort Bert-hold reservation at the time of the accident. The U.S. Supreme Court held that her residence at the time of the accident was immaterial.

. Sec. 103. Hearing.
At the time the verified complaint is filed, the clerk shall schedule a hearing on the claim not less than fifteen (15) days after the complaint is filed. The clerk shall furnish the plaintiff with a copy of the notice showing the time and place of the hearing and shall affix such notice to the copy of the complaint to be served on each defendant. At the hearing, the presiding judge shall ascertain whether: (a) The defendant has any defenses to the claim, or wishes to present any counterclaim against the plaintiff or cross-claim against any other party or person concerning the same transaction or occurrence;
(b) Any party wishes to present evidence to the Court concerning the facts of the transaction or occurrence;
(c) The interest of justice require any party to answer written interrogatories, produce any documents or other evidence, or otherwise *189 engage in any pre-trial discovery considered proper by the judge;
(d) Some or all of the issues in dispute can be settled without a formal adjudication; and
(e) The claim is ready for trial;
(1) If the claim is ready for trial, the judge may try it immediately or set a subsequent date for trial.
(2) If the claim is not ready for trial, the judge shall set a subsequent date for trial and order such preparation by the parties as he/she deems necessary.