OPINION AND ORDER
GARY P. SULLIVAN, Chief Justice.
BRIEF FACTUAL OVERVIEW AND PROCEDURAL HISTORY
Faye Marie Bird and James Wein-berger are enrolled members[2] of the Fort Peck Tribes and reside within the exterior boundaries of the Fort Peck Indian Reservation, Faye was pregnant and sought medical treatment and services from Elaine Becker, allegedly employed by the Indian Health Service as a nurse-midwife. Dr. Mark Zilkoski is a licensed Montana physician who is not a member of the Fort Peck Tribes, but practices medicine on the reservation and who enjoys privileges at the Poplar Community Hospital[3]. Pop *348 lar Community Hospital (PCH) is located within the exterior boundaries of the Fort Peck Indian Reservation. Dr. Zilko-ski provided consulting services to Nurse Becker, Faye and James claim that Dr. Zilkoski is effectively Nurse Seeker’s supervisor and that he assists her in the management of obstetrics patients.
During her pregnancy, Faye gained 71 pounds and at 42 weeks along, she had not yet delivered. On or about September 26, 1998, Nurse Becker admitted Faye to PCH to induce labor. Faye and James claim that Dr. Zilkoski knew of Faye’s condition and approved the inducement of labor. Baby Payton died shortly after birth.
Plaintiffs claim that Nurse Becker and Dr. Zilkoski knew, or should have known, of the “serious and grave condition” of Faye and her unborn child. They further allege that Nurse Becker, Dr. Zilkoski, and PCH were responsible for treating and assisting Faye, yet “they failed to chart Faye’s progress, failed to recognize her true medical condition, failed to provide proper equipment and medication to aid her delivery, and failed to timely transfer her to an appropriate medical facility that would be able to address her medical complications”. Ultimately, plaintiffs charge that the inappropriate care and treatment by the defendants on the reservation resulted in the baby’s death of presumed sepsis.
Defendants claim that Faye, late in her pregnancy, failed to attend pre-natal visits at IHS and that Nurse Becker had to take steps to locate Faye and “bring her in” for her medical appointment. As a result of the appointment, a decision was made by Nurse Becker and Faye to induce labor. According to defendants, Dr. Zilkoski’s involvement was limited to a telephonic consultation regarding the induction process and the patient’s progress.
Faye and James filed an unverified complaint for medical malpractice on February 19, 1999. The defendants were served between March & and March 8, 1999. On March 26, 1999, counsel filed a Motion to Dismiss on behalf of Dr. Zilkoski and PCH[4] for improper service, improper summons, lack of personal and subject matter jurisdiction, failure to state a claim, and failure to first submit the claim to the Montana Medical Legal panel. The plaintiffs and defendants submitted briefs on all points and the matter was submitted. The Tribal Court, the Honorable Barry C. Bighorn, presiding, denied the Motion on March 8, 2000.
ISSUES PRESENTED
Dr. Zilkoski and PCH ask that we review the Tribal Court’s order regarding the following issues[5]:
1) The Tribal organic documents do not establish that the Court has jurisdiction of this matter;
a. The April 15, 1874 Act which created the reservation does not grant civil jurisdiction over nonmembers of the tribe;
*349 b. The Tribal Constitution itself does not permit this lawsuit against non-Indians;
2) The Tribal Court lacks subject matter jurisdiction because:
a. Plaintiffs cannot satisfy Montana’s first exception because there is no ongoing reservation based consensual relationship,
b. Plaintiffs’ action fails to satisfy Montana’s second exception because it asks the Court to interpret the exception too broadly.
3) This action should be dismissed for lack of compliance with the Tribal Code with regard to Service of Process and verification of the complaint.
STANDARD OF REVIEW
“The jurisdiction of the Court of Appeals shall extend to all appeals from final orders and judgments of the Tribal Court, The Court of Appeals shall review de novo all determinations of the Tribal Court on matters of law, but shall not set aside any factual determinations of the Tribal Court if such determinations are supported by substantia] evidence”. Title II CCOJ 2000 § 202. Whether our Tribal Court has subject matter jurisdiction in an alleged medical malpractice action against a licensed physician whose practice is outside the exterior boundaries of the Fort Peck Indian reservation, and a non-Indian owned Hospital located on alleged non-Indian alienated land within the exterior boundaries of the Foil Peck Indian reservation are questions of law which we review de novo. We have previously determined that a denial of a motion to dismiss is a final order for the purposes of § 202 (In re: Custody of M.W. FPCOA # 242).
DISCUSSION

1. Tribal organic documents issue.

The April 15. 1874 Act and The Tribal Constitution issue. The defendants’ argument that the Tribal organic documents do not establish the Court’s jurisdiction over them is virtually the same argument we heard in WPCO v. 1CA FPCOA # 825 (2001) Indeed, the briefing and authorities submitted to support this proposition were virtually identical as well. In WPCO, a sub-entity (WPCO) of the Fort Peck Tribes invested approximately $840,000 in the Krupp Trust through solicitations of Investment Center of America’s agent. WPCO filed a lawsuit in Tribal Court against ICA, its agent and an accounting firm, alleging various causes of action, including fraudulent and/or negligent misrepresentation. In WPCO we rejected both components of the “organic documents” issue stating:
“This ‘failure to provide in the organic documents’ argument summarily disregards over one-hundred and thirty years of United States Supreme Court decisions which have fashioned rules of construction for these treaties and the relationship of the United States with Indian Tribes .... ” (id. at p. 6)
We concluded by stating:
“... it is unnecessary to show the lack of historical support for defendants’ ‘organic documents’ argument. One needs only to review those federal decisions within the one hundred thirty ensuing years to conclusively show that tribal courts do have jurisdiction over non-Indians for reservation based claims ...” (id. at p. 9)
Due to the exhaustive treatment of this issue in WPCO, we find it unnecessary to re-visit and detail our position here. For a more thorough discussion of our reasoning see WPCO at pp. (i-11.
2. The subject matter jurisdiction Defendants also argue that the Tribal *350 Court lacks subject matter jurisdiction under Montana v. U.S. 450 U.S, 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). Montana held that Tribal governments lacked jurisdiction to regulate hunting and fishing of non-members when that activity takes place on non-Indian, alienated land, subject to only two exceptions. The first exception relates to non-members who enter consensual relationships with the tribe or its members; the second concerns nonmembers’ conduct that directly affects the tribe’s political integrity, economic security, health, or welfare. Defendants contend that the plaintiffs cannot satisfy either of the two exceptions. We must respectfully disagree. The Tribal Court held that both exceptions apply, however, to find subject matter jurisdiction, we are required only to find one of the two exceptions present. Therefore we examine Montana’s first exception only.
The factual situation here is similar to the facts in Clark v. Richter, FPCOA # 300, 2000 WL 35716989, 2 Am. Tribal Law 179 (2000) wherein we affirmed the Tribal Court’s denial of defendant’s Motion to Dismiss. In Clark plaintiff was a member of the Fort Peck Tribes, suing a non-Indian doctor, for damages resulting from an alleged malpractice injury that took place on the grounds of the Poplar Community Hospital, Poplar, MT, and continued at another medical facility off the reservation. We held that plaintiff patient and defendant doctor had entered into a consensual relationship. Similarly, Faye had a direct, consensual agreement with Nurse Becker and PCH for medical services. Whether Faye was ever attended directly by Dr. Zilkoski is unknown. Whether Nurse Becker ever attended Faye at any location other than the PCH is also unknown. Defendants claim that the only “contact” with Dr. Zilkoski and Faye was a “telephonic consultation” between Dr. Zilkoski and Nurse Becker regarding Faye’s condition. Nonetheless, such consultation regarding Faye’s medical condition places Dr. Zilkoski within the ambit of Faye’s agreement with Nurse Becker and PCH. It should also be noted that Dr. Zilkoski had privileges at PCH and both he and the hospital apparently have agreements with the IHS. Those agreements potentially touch and concern all of the members of the Fort Peck Tribes, as well as other Indians who qualify for the medical services paid for by the IHS. These services were all provided within the exterior boundaries of the Fort Peck Indian Reservation. Additionally, we take judicial notice that members of the Fort Peck Tribal Executive Board sit on the PCH board, the same board that oversees the activities of PCH, including those licensees who enjoy hospital privileges. Thus, whether or not the Fort Peck Tribes is directly involved with the aforementioned agreements, it is certain that they are no “strangers” to those agreements. Therefore, we hold that the first exception in Montana has been met.
The service of process and failure to verify the complaint issues. Defendants argue that the plaintiffs have not complied with Title VIII CCOJ 2000 §§ 101 and 103[6] § 101 requires that a complaint be verified and § 103, which provides, inter alia, for the clerk to schedule a hearing on the claim not less than fifteen (15) days after the complaint is filed.
Regarding § 101, defendants followed the rule that we set forth in Clark, holding that any objection to a defect in the complaint must be filed with the Court before or concurrent with defendant’s first paper. The Tribal Court ruled that the issue of lack of verification of the com *351 plaint was harmless error inasmuch as the plaintiffs acknowledged the error and requested permission to file an amended complaint and that defendants had shown no prejudice as a result of the lack of verification and further, that defendants did not even file a response to plaintiffs’ request to file the amended complaint. Accordingly, the Tribal Court granted plaintiffs leave to file their amended complaint. We wholeheartedly agree with the Tribal Court’s action.
Regarding § 103, the Tribal Court also found harmless error, citing the fact that both Dr. Zilkoski and PCH appeared at the hearing through their counsel. The Court reasoned that the appearance alone proved that the alleged defects in the Notice and the form of the summons accomplished its purpose. Not only do we agree with the Tribal Court but we also note that any purported defect in a § 103 hearing is not ripe for review if there is no final order from the Tribal Court denying defendants such hearing. Clark, 2000 WL 35716989, 10: In re: M.W. FPCOA #242 (1996).
Accordingly, the Tribal Court’s order of March 8, 2000 denying Defendants’ Motion to Dismiss is affirmed
CONCUR: GERARD M. SCHUSTER, Associate Justice, JAMES DECOTEAU, Associate Justice.

. A few days before oral argument was heard on July 21, 2000, this Court received a letter from Michael Tolstedt, Esq., counsel for plaintiffs. Mr. Tolstedt advised this Court that “it has come to my attention that we have inadvertently misstated in the pleadings of this case, that Plaintiff, Faye Marie Bird, is an ‘enrolled member' of the Fort Peck Tribe (sp). We should have stated that Ms. Bird, while not officially enrolled as a member of the Fort Peck Tribe (sp), is a person who is ‘eligible for enrollment’ in the Fort Peck Tribe (sp). We deeply apologize to the Court and defense counsel for this inadvertent oversight. To the extent that defense counsel believes this may afford Defendant further grounds to contest the jurisdiction of the Tribal Court, Plaintiffs’ counsel believes they are entitled to a full and fair opportunity to explore this issue.” We received no response from defense counsel, thus we assume that defense counsel reasoned that no additional grounds for dismissal resulted from the error.

.Dr. Zilkoski’s brief does not identify his relationship with Fort Peck, nor his relationship with Poplar Community Hospital. His brief does indicate that he rendered "telephonic” consultations to Nurse Becker. Plaintiffs claim that Dr. Zilkoski "practices *348 medicine on the reservation and has privileges at Poplar Community Hospital”. Inasmuch as plaintiffs’ claims are not rebutted, we will assume their correctness.

. This is information is taken from the Court’s order issued March 8, 2000, denying the Motion to Dismiss.

. In their brief, defendants added an issue that was not contained in their Petition for Review, namely, "The Court improperly determined that Resolution # 370-96-1 overrides the Fort Peck Court’s decision in Ferguson v. Poplar Community Hospital." We decline to review this issue in that it is not properly before us. Title II CCOJ 2000 § 207(b) (See also In re: M.W. FPCOA# 242 (1996))

. These sections were formerly Title V §§ 101 and 103